768 F.2d 348
 AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 2718,
American Federation of Government Employees
National Immigration and Naturalization
Service Council, and Phyllis
McCullough, Petitioners,
v.
DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION
SERVICE, Respondent.
 Appeal No. 84-1366.
 United States Court of Appeals,
Federal Circuit.
 July 25, 1985.
 
 Kevin M. Grile, American Federation of Government Employees, of Northfield, Ill., for petitioners.
 Sandra P. Spooner, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for respondent. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, and William C. Owen, Washington, D.C., of counsel.
 Before MARKEY, Chief Judge, BALDWIN and SMITH, Circuit Judges.
 BALDWIN, Circuit Judge.
 
 
 1
 Petitioners, Phyllis McCullough, American Federation of Government Employees, Local 2718 (AFGE), and American Federation of Government Employees National Immigration and Naturalization Service Council (AFGE Council), bring this petition for review of an arbitration award which mitigated the Immigration and Naturalization Service's (INS) removal of McCullough to a 15-day suspension but denied back pay for the period during which McCullough was out of work. Petitioners argue that the award is contrary to provisions of the Back Pay Act. Respondent has moved to dismiss AFGE and AFGE Council on the ground that they lack standing.[1] We affirm the arbitrator's award.
 
 Background
 
 2
 Phyllis McCullough is a GS-5 Applications Clerk with INS. Effective September 7, 1983, the agency removed McCullough based on charges of being involved in a marriage fraud scheme. The charges resulted from an investigation conducted by the agency's internal Security Office in conjunction with the U.S. Attorney's office, in which the agency determined that an individual named Edward "Doc" Williams--ostensibly an ordained minister--and his associate, Wilbert Reynolds, submitted applications for "green cards"[2] through McCullough and other clerks at the Public Assistance Counter of INS' Chicago facility on behalf of a number of male foreign nationals and their spouses who were United States citizens. Williams and Reynolds were arrested and plead guilty to, inter alia, arranging sham marriages and helping those couples complete falsified applications to obtain green cards for the foreign nationals. Williams and Reynolds also implicated McCullough as an accomplice.
 
 
 3
 Agency investigators interviewed McCullough regarding the allegations. During the interview, she denied any knowledge of Williams and Reynolds, and denied any participation in their scheme.
 
 
 4
 Relying on the conflict between McCullough's answers and the statements of Williams and Reynolds, the fact that McCullough, one of nine clerks in the office, processed 11 of the 22 fraudulent applications made by the foreign nationals who were assisted by Williams and Reynolds, and the fact that she declined to testify when called before the federal grand jury which was investigating the Williams-Reynolds scheme, INS proposed to remove McCullough for: (1) "Acceptance of Proscribed Gratuities for the Performance of Official Duties," and (2) "Submitting False Statements Under Oath in an Official Investigation."
 
 
 5
 Upon being advised that she was to be terminated on these charges, McCullough acknowledged knowing and having spoken to both Williams and Reynolds but steadfastly maintained that she had not acted improperly and that she was not involved in the marriage fraud scheme. When her removal was effected on September 7, 1983, she filed a grievance pursuant to the negotiated agreement between INS and the union.
 
 
 6
 An arbitration hearing was conducted on January 12, 1984, and in a March 21, 1984 award, the arbitrator held:
 
 
 7
 1. While the allegation ... that [McCullough] submitted false statements under oath in an official investigation is true and correct, the allegation that she accepted proscribed gratuities for the performance of official duties is not true and/or correct.
 
 
 8
 2. There is neither appropriate cause nor just and sufficient cause for the removal of [McCullough].
 
 
 9
 3. The appropriate remedy is a 15-day suspension. Thereafter [McCullough] is to be reinstated without loss of seniority or seniority-related benefits, but also without back pay.
 
 
 10
 In concluding his analysis which details his reason for finding that the agency failed to prove that McCullough was a paid accomplice, the arbitrator added:
 
 
 11
 While the state of the record compels the Arbitrator to reinstate [McCullough], he is totally unimpressed and unsympathic to the reasons why she failed to be truthful and why, if true, she failed to notify anyone in the department that Williams had threatened her about the time of her Grand Jury call.
 
 
 12
 Because this was conduct relied upon by the Agency's moving officials in reaching its conclusion that her conduct warranted removal, and because it is entirely probable that such a conclusion would not have been reached if [McCullough] had acted honestly and with integrity, the fact that she suffered over six months loss of income is as much attributable to her as it is to the Agency's erroneous conclusion of law. For that reason, the [arbitrator] cannot award [McCullough] any backpay.
 
 OPINION
 
 13
 This court reviews an appeal from an arbitrator's decision under the same standard of review governing appeals from the Merit Systems Protection Board. 5 U.S.C. Sec. 7121(f) (1982); Cornelius v. Nutt, --- U.S. ----, ---- n. 16, 105 S.Ct. 2882, 2890 n. 16, 86 L.Ed.2d 515 (1985); Grigsby v. Department of Commerce, 729 F.2d 772, 774 (Fed.Cir.1984). Thus, the court must review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be--
 
 
 14
 (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 
 
 15
 (2) obtained without procedures required by law, rule, or regulation having been followed; or
 
 
 16
 (3) unsupported by substantial evidence.
 
 
 17
 5 U.S.C. Sec. 7703(c) (1982).
 
 
 18
 McCullough argues on appeal that she is entitled to back pay under the applicable provisions of the Back Pay Act[3] for the period she was unemployed which was not covered by the 15-day suspension. In effect, she is contending that the arbitrator's decision is contrary to law insofar as it mitigates the agency's removal to a 15-day suspension but denies back pay for the remaining period that she was out of work.
 
 
 19
 We conclude that the arbitrator's decision is not contrary to the Back Pay Act. Section 5596(b)(1)(A) states that an employee, "affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the [employee's] pay," is entitled "on correction of the personnel action" to receive back pay for the period for which the personnel action was in effect. That language is meant to cover a situation, for example, where the decisionmaker has reversed an agency imposed removal or suspension action, precisely because the action was "unjustified or unwarranted." Plainly, the section does not cover a situation where the arbitrator has mitigated a removal, has found the employee as much responsible for the removal action as the agency, and has expressly denied back pay as part of the mitigated penalty.
 
 
 20
 Implicit in McCullough's argument is that the arbitrator could not deny back pay for a period greater than that encompassed by the suspension. To adopt such a proposition would impair the arbitrator's broad discretion in fashioning a just award which takes account of the parties' mutual interests and conduct. In reviewing the Back Pay Act, and the legislative history cited by McCullough, we are unable to find any provision which precludes an arbitrator from denying back pay as part of a mitigated penalty, or which limits a denial of back pay to a period of suspension.
 
 
 21
 The arbitrator's decision to deny back pay as part of McCullough's mitigated penalty was grounded on his finding that McCullough, by submitting false statements under oath to the INS investigators, was as much responsible for the removal action (and the six months loss of income) as was the agency. That finding is supported by substantial evidence.
 
 
 22
 Having considered McCullough's arguments, we conclude that the arbitrator's award is not contrary to statute and that the arbitrator's findings are supported by substantial evidence.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 We need not reach this issue inasmuch as the employee, McCullough, has standing to petition for review. Indeed, the same attorney represents McCullough, AFGE, and AFGE Council
 
 
 [2]
 A "green card" is evidence that one is a legal permanent resident in the United States
 
 
 [3]
 Specifically, 5 U.S.C. Sec. 5596(b)(1)(A)(i) (1982):
 (b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee--
 (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect--
 (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period....